1   **WO**

2

3

4

5

6

7               **IN THE UNITED STATES DISTRICT COURT**

8                    **FOR THE DISTRICT OF ARIZONA**

9

10  Joseph Rudolph Wood, III,              No. CV-98-0053-TUC-JGZ

11              Petitioner,                <u>Death Penalty Case</u>

12        vs.                              ORDER

13  Charles L. Ryan, et al.,

14              Respondents.

15

16

17

18          Petitioner Joseph Wood is an Arizona death row inmate. His execution is

19  scheduled for July 23, 2014. Before the Court are Petitioner's Motion for Relief from

20  Judgment Pursuant to Rule 60(b)(6) and Motion for Stay of Execution, which were filed

21  July 17, 2014. (Docs. 116, 117.) Respondents filed a response in opposition, to which

22  Petitioner filed a reply. (Docs. 122, 123.)

23

24          Citing *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Petitioner asserts he is entitled

25  to relief based on the ineffectiveness of his post-conviction counsel, which prevented

26  this Court from addressing the following allegations: that the trial court prevented

27  Petitioner from obtaining neurological mitigating evidence; that trial counsel was

28

                                            1

ineffective for failing to impeach a State's witness; that appellate counsel had a conflict of interest; and that trial counsel performed an inadequate mitigation investigation. (*See* Doc. 116 at 2, 4–14.) For the reasons set forth below, Petitioner's Rule 60(b) motion is denied, as is his motion for a stay of execution.

## BACKGROUND

Petitioner shot and killed his estranged girlfriend, Debra Dietz, and her father, Eugene Dietz, on August 7, 1989. Following a jury trial, Petitioner was convicted of two counts of first degree murder and two counts of aggravated assault. He was sentenced to death for each murder and for a term of imprisonment for each aggravated assault. The Arizona Supreme Court affirmed the convictions and sentences on October 11, 1994. *State v. Wood,* 881 P.2d 1158 (1994). The United States Supreme Court denied certiorari on June 19, 1995. *Wood v. Arizona,* 515 U.S. 1147 (1995).

Petitioner filed his first Rule 32 petition for post-conviction relief ("PCR") on February 11, 1992. The trial court stayed the petition pending the outcome of the direct appeal to the Arizona Supreme Court. Following its receipt of the mandate, the trial court appointed new counsel to represent Petitioner. He filed a new PCR petition on March 1, 1996. The trial court denied the petition on June 6, 1997. The Arizona Supreme Court denied a petition for review on November 14, 1997.

Petitioner filed a petition for writ of habeas corpus on February 3, 1998, and an amended petition on November 30, 1998. (Docs. 1, 23.) On March 22, 2006, the Court issued an order addressing the procedural status of Petitioner's claims. (Doc. 63.) The

2

Court addressed the remaining claims on the merits and denied habeas relief in an order and judgment dated October 25, 2007. (Docs. 79, 80.) Petitioner appealed to the Ninth Circuit Court of Appeals.

In August 2012, Petitioner moved the Ninth Circuit to remand the case to this Court. Motion for Remand, *Wood v. Ryan*, 693 F.3d 1104 (No. 74). He argued, pursuant to *Martinez*, that PCR counsel's ineffective performance constituted cause for the default of his ineffective assistance of counsel claims. *Id.* The Court of Appeals denied remand. *Id.* (No. 77.)

On September 10, 2012, the Ninth Circuit affirmed this Court's denial of habeas relief, *Wood v. Ryan*, 693 F.3d 1104 (9th Cir. 2012). The United States Supreme Court denied certiorari on October 7, 2013. *Wood v. Ryan*, 134 S. Ct. 239 (2013).

Petitioner filed a second PCR petition on August 2, 2002. The trial court denied the petition on November 7, 2002. The Supreme Court denied the petition for review on May 26, 2004.

The State filed a Motion for Warrant of Execution on April 22, 2014. The warrant was granted on May 28, and execution was set for July 23, 2014.

On April 30, 2014, the Court granted Petitioner's motion to substitute the Federal Public Defender's Office ("FPD") as co-counsel. (Doc. 105.)

Petitioner filed a third PCR petition on May 6, 2014, raising two claims: (1) there has been a significant change in the law of "causal connection," as it relates to the consideration of mitigating evidence at sentencing, and (2) appellate counsel provided

ineffective assistance as a result of an actual conflict of interest. The court denied the petition on July 9, 2014.

On July 14, 2014, Petitioner filed a petition for review in the Arizona Supreme Court. The court denied the petition on July 17, 2014.

On July 17, 2014, Petitioner filed the instant motion for relief from judgment and motion for a stay, and this Court set a briefing schedule. (Docs. 116, 117, 118.)

## DISCUSSION

I.  *Martinez v. Ryan*

In *Martinez*, the Court created a narrow exception to the well-established rule in *Coleman v. Thompson*, 501 U.S. 722, 731 (1991), that ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse the procedural default of an ineffective assistance of counsel claim. Under *Martinez*, a petitioner may establish cause for the procedural default of a claim of ineffective assistance of trial counsel by demonstrating two things: (1) "counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668 (1984)," and (2) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 132 S. Ct. at 1318).

4

The Ninth Circuit recently extended the holding in *Martinez* to apply to procedurally defaulted claims of ineffective assistance of appellate counsel. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1294–95 (9th Cir. 2013).

## II.    Rule 60(b)(6)

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). A motion under subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). "Such circumstances will rarely occur in the habeas context." *Id.*

### A.    Extraordinary circumstances

Petitioner contends that the *Martinez* decision constitutes an extraordinary circumstance. When a petitioner seeks post-judgment relief based on an intervening change in the law, the Ninth Circuit has directed district courts to balance numerous factors on a case-by-case basis. *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009); *see also Lopez v. Ryan*, 678 F.3d 1131, 1135–37 (9th Cir. 2012). These factors include whether "the intervening change in the law . . . overruled an otherwise settled legal precedent"; whether the petitioner was diligent in pursuing the issue; whether "the final judgment being challenged has caused one or more of the parties to change his position in reliance on that judgment"; whether there is "delay between the finality of

the judgment and the motion for Rule 60(b)(6) relief"; whether there is a "close connection" between the original and intervening decisions at issue in the Rule 60(b) motion; and whether relief from judgment would upset the "delicate principles of comity governing the interaction between coordinate sovereign judicial systems." *Phelps,* 569 F.3d at 1135–40. Having carefully balanced these factors, the Court concludes that they weigh against granting post-judgment relief.

### B.    Second or successive petitions

For habeas petitioners, Rule 60(b) may not be used to avoid the prohibition set forth in 28 U.S.C. § 2244(b) against second or successive petitions.[1] In *Gonzalez,* the Court explained that a Rule 60(b) motion constitutes a second or successive habeas petition when it advances a new ground for relief or "attacks the federal court's previous resolution of a claim *on the merits.*" 545 U.S. at 532. "On the merits" refers "to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." *Id.* at n.4. The Court further explained that a Rule 60(b) motion does *not* constitute a second or successive petition when the petitioner "merely asserts that a previous ruling which precluded a merits

---

[1]    Section 2244(b)(3) requires prior authorization from the court of appeals before a district court may entertain a second or successive petition under § 2244(b)(2). Absent such authorization, a district court lacks jurisdiction to consider the merits of a second or successive petition. *United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011); *Cooper v. Calderon*, 274 F.3d 1270, 1274 (9th Cir. 2001).

determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.*

## III.   Petitioner's Claims

Petitioner seeks relief from this Court's judgment finding three of his habeas claims defaulted. (Doc. 116 at 17–18.) He also contends that he is entitled to relief from the Court's denial on the merits of his claim that trial counsel performed an inadequate mitigation investigation. (*Id.*) The Court will briefly outline these claims. A more complete discussion can be found in the Court's order on the procedural status of Petitioner's claims and the Court's order denying Petitioner's amended petition for writ of habeas corpus. (Docs. 63, 79.)

### A.   Failure to fund neurological testing

In Claim VI of his habeas petition, Petitioner argued that the trial court violated his rights when it denied funding for neurometric brain mapping and thereby prevented the presentation of mitigating evidence of organic brain dysfunction. (Doc. 24 at 81–88.) This Court concluded that Petitioner failed to properly exhaust the claim in state court and therefore the claim was procedurally barred. (Doc. 63 at 32.) The Ninth Circuit agreed. *Wood*, 693 F.3d at 1121.

### B.   Failure to impeach Officer Anita Sueme

At trial the State argued that the sequence of bullets remaining in Petitioner's weapon indicated that the gun had been cocked and uncocked without firing. Officer Sueme was one of officers at the crime scene. She testified that she recovered

Petitioner's weapon but never opened the cylinder. In recounting her story to a crime writer, however, Sueme purportedly stated that she had picked up the gun, opened the cylinder, and removed some of the bullets.

In the pending 60(b) motion, Petitioner contends that counsel performed ineffectively by failing to impeach Officer Sueme with her prior inconsistent statement because rebutting evidence that Petitioner had cocked and uncocked the gun would have undermined the "grave risk to another" aggravating factor found by the sentencing court. (Doc. 116 at 10, 22–25.) In Claim X(C)(2) of his habeas petition, Petitioner raised a different argument, alleging that counsel performed ineffectively by failing to impeach Sueme because the testimony would have "wholly rebutted a key factual component of the state's premeditation argument." (Doc. 24 at 131.)

This Court found habeas Claim X(C)(2) procedurally barred because it was not presented to the state court. (Doc. 63 at 36.) The Ninth Circuit Court of Appeals agreed. *Wood*, 693 F.3d at 1119.

### C.    Appellate counsel conflict of interest

Petitioner was represented on appeal by Barry Baker Sipe. Following his appointment as appellate counsel, Baker Sipe sought leave to withdraw on the ground that he was joining the Pima County Legal Defender's Office, which had previously represented the victim, Debra Dietz, in a separate matter. (*See* Doc. 63 at 39–40.) A justice on the Arizona Supreme Court granted the motion and remanded to the trial court to appoint new counsel. (*Id.* at 40.) Prior to the Arizona Supreme Court's order,

however, the trial judge held a hearing at which it considered the conflict issue. (*Id.*) The judge expressed his desire to keep Baker Sipe on the case and proposed to review *in camera* the Legal Defender's file concerning its representation of Debra Dietz. (*Id.*) The judge also stated that he did not want to keep Baker Sipe on the case and "have it reversed because of some conflict that I don't see." (*Id.*) Baker Sipe responded that he had "done a lot" on the appeal, had "a good relationship with Mr. Wood" and essentially acquiesced to the trial court's proposal. (*Id.*) After the Arizona Supreme Court's order had issued, the trial judge appointed the Legal Defender's Office to represent Petitioner on direct appeal. (*Id.*) Petitioner did not renew his request for the substitution of counsel on direct appeal, nor did he raise the issue in his PCR proceedings.

In Claim XI(A) of his habeas petition, Petitioner alleged that Baker Sipe performed ineffectively by failing to withdraw due to a conflict of interest. (Doc. 24 at 148–50.) He argued that the claim was properly exhausted when the Arizona Supreme Court granted the motion to withdraw. This Court disagreed, holding that the Arizona Supreme Court "had no cause to consider the claim presented in this action"—i.e., that appellate counsel performed ineffectively due to the conflict of interest. (Doc. 63 at 40.) The claim was therefore procedurally defaulted and barred. (*Id.* at 40–41.) The Ninth Circuit affirmed. *Wood*, 693 F.3d at 1121.

/ / /

/ / /

**D.     Inadequate mitigation investigation**

In Claim X(C)(3) of his habeas petition, Petitioner alleged that counsel performed ineffectively at sentencing by failing to obtain and present an in-depth neurological evaluation of Petitioner and other mitigation evidence concerning his family history of alcoholism and mental health issues. (Doc. 24 at 136–43.) The Court found that the claim had been properly exhausted (Doc. 63 at 37) and proceeded to consider it on the merits. The Court concluded that Petitioner was not entitled to relief because he failed to show that he was prejudiced by counsel's performance under *Strickland*, 466 U.S. at 700, and the deferential standard of review required by the AEDPA. (Doc. 79 at 62.) Specifically, the Court found that the new information offered by Petitioner was inconclusive or cumulative of evidence counsel did present at sentencing. The Court of Appeals affirmed. *Wood*, 693 F.3d at 1120.

This Court also denied Petitioner's request for evidentiary development in the form of resources to retain a neuropsychologist and a mitigation specialist. (Doc. 79 at 67–72.) The Court concluded that Petitioner's ineffective assistance claim could be resolved on the record and that even if the new facts alleged by Petitioner proved true, he would not be entitled to habeas relief. (*Id.* at 72.) The Court of Appeals found that the Court did not abuse its discretion by denying evidentiary development. *Wood*, 693 F.3d at 1122.

/ / /

/ / /

10

**IV.   ANALYSIS**

    **A.   Defaulted Claims**

Petitioner contends, and the Court agrees, that pursuant to Rule 60(b)(6) he may seek reconsideration of the claims this Court found procedurally barred. *See Gonzalez*, 545 U.S. at 532. These include the claims that the trial court failed to provide funding (hereinafter Claim A); that trial counsel performed ineffectively in cross-examining Officer Sueme (Claim B); and that appellate counsel labored under a conflict of interest (Claim C).

As previously noted, a motion under subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and requires a showing of "extraordinary circumstances." *Gonzalez,* 545 U.S. at 532, 535. Petitioner does not satisfy these criteria.

Petitioner filed his Rule 60(b)(6) motion more than six years after the Court's order denying habeas relief, more than two years after the decision in *Martinez*, seven weeks after the warrant for his execution issued, and just three business days before his scheduled execution. The Court is skeptical that this meets the benchmark of filing "within a reasonable time." *See Kingdom v. Lamerque*, 392 Fed.Appx. 520, 2010 WL 3096376, at *1 (9th Cir. 2010) (finding prisoner's 60(b)(6) motion untimely when it was filed two years after judgment); *Ramsey v. Walker*,  304 Fed.Appx. 827, 829, 2008 WL 5351670, at *2 (11th Cir. 2008) ("[D]istrict court did not abuse its discretion in denying Ramsey's Rule 60(b) motion because it was not filed within a reasonable time of the

court's denial of his § 2254 petition. Notably, he filed the motion more than six years after the denial of his § 2254 petition and two years after the cases on which he relied were decided."); *Horton v. Sheets*, No. 2:07-cv-525, 2012 WL 3777431, 2 (S. D. Ohio August 3, 2012) ("A motion filed under Rule 60(b)(6) must be filed within a "reasonable time." Petitioner, however, waited more than two years after the Supreme Court issued its decision in *Holland* to file his motion for reconsideration."). Assuming, however, that the motion is timely, it fails to satisfy the "extraordinary circumstances" criterion.

### 1.   Extraordinary circumstances are not present

Petitioner also fails to show that the decision in *Martinez* constitutes an extraordinary circumstance entitling him to relief. In reaching this conclusion the Court applies the *Phelps* factors as follows.

### a.   Change in law

The first factor considers the nature of the intervening change in the law. In *Lopez,* another capital case from Arizona in which the petitioner sought relief under Rule 60(b) based on *Martinez,* the court found that the Supreme Court's creation of a narrow exception to otherwise settled law in *Coleman* "weigh[ed] slightly in favor of reopening" the petitioner's habeas case. 678 F.3d at 1136. "Unlike the 'hardly extraordinary' development of the Supreme Court resolving an existing circuit split, *Gonzalez*, 545 U.S. at 536, the Supreme Court's development in *Martinez* constitutes a remarkable—if 'limited,' *Martinez*, 132 S. Ct. at 1319—development in the Court's

equitable jurisprudence." *Id.* Thus, based on *Lopez*, this factor weighs slightly in Petitioner's favor. *But see Nash v. Hepp,* 740 F.3d 1075, 1078 (7th Cir. 2014) (finding that the change in law represented by *Martinez* "is not an extraordinary circumstance justifying relief under Rule 60(b)(6)"); *Arthur v. Thomas*, 739 F.3d 611, 633 (11th Cir. 2014) ("the change in decisional law created by the *Martinez* rule does not constitute an 'extraordinary circumstance.' Thus, the district court did not abuse its discretion when it denied Arthur's Rule 60(b)(6) motion."); *Adams v. Thaler*, 679 F.3d 312, 219 (5th Cir. 2012) (finding Fifth Circuit precedents hold a change in decisional law after entry of judgment does not constitute exceptional circumstances under Rule 60(b)(6)).

### b.    Diligence

The second *Phelps* factor "considers the petitioner's exercise of diligence in pursuing the issue during the federal habeas proceedings." *Lopez*, 678 F.3d at 1136. This factor weighs against Petitioner.

Petitioner did not allege ineffectiveness of PCR counsel in his habeas proceedings before this Court (*see* Doc. 32 at 113–19, 144–45, 151–52), or on appeal from this Court's denial of relief, Appellant's Opening Brief, *Wood v. Ryan*, 693 F.3d 1104 (No. 26-1). He did not raise the issue two years ago, when *Martinez* was decided. His motion to remand, filed five months after *Martinez*, presented only a generalized argument that *Martinez* was applicable to Petitioner's ineffective assistance claims. It was only in the pending Rule 60(b) motion that Petitioner offered any argument that *Martinez* applied to excuse the procedural default of specific claims. In sum, this is not

a case, such as *Phelps,* where the petitioner "pressed all possible avenues of relief" on the identical legal position ultimately adopted in a subsequent case as legally correct. 569 F.3d at 1137; *see Lopez*, 678 F.3d at 1136.[2]

Petitioner asserts that he was diligent because his motion was brought two months after the FPD was appointed as co-counsel, and it was only after the appointment that a proper mitigation investigation could be performed.[3] The Court rejects the notion that a challenge to its procedural rulings must await the results of a more-thorough mitigation investigation performed by newly-appointed counsel. Moreover, Claims B and C bear no relationship to the results of that investigation.

c.     Finality

The third factor asks whether granting relief under Rule 60(b) would "'undo the past, executed effects of the judgment,' thereby disturbing the parties' reliance interest in the finality of the case." *Phelps*, 569 F.3d at 1137 (quoting *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987)). In *Lopez,* the court found that the State's and the victim's interest in finality, especially after a warrant of execution has been obtained and an

---

[2]      In *Lopez,* the court did not fault the petitioner for failing to raise the cause issue in his original federal habeas proceeding before the district court, noting that the issue was "squarely foreclosed by binding circuit and Supreme Court precedent." 678 F.3d at 1136 n.1. The court nonetheless found a lack of diligence because the petitioner failed to raise the issue in his petition for certiorari from the denial of federal habeas relief, filed in August 2011, which was the "same time frame . . . other petitioners, like Martinez, were challenging *Coleman." Id.* at 1136.

[3]      Petitioner was examined by a clinical psychologist and a neuropsychologist on June 17 and June 25 and 26, 2014. (Doc. 116 at 14.) Petitioner states that he will supplement his motion with the experts' reports when they are available. (*Id.*)

14

execution date set, weighed against granting post-judgment relief. 678 F.3d at 1136; *see Jones v. Ryan*, 733 F.3d 825, 840 (9th Cir. 2013) ("This factor weighs strongly against Jones."); *see also Calderon v. Thompson,* 523 U.S. 538, 556 (1998) (discussing finality in a capital case). Accordingly, this factor weighs heavily against reopening Petitioner's habeas case.

d.     Delay

"The fourth factor concerns delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Lopez*, 678 F.3d at 1136. This factor examines whether a petitioner seeking to have a new legal rule applied to an otherwise final case has petitioned the court for reconsideration "with a degree of promptness that respects the strong public interest in timeliness and finality." *Phelps*, 569 F.3d at 1138 (internal quotation omitted). In this context courts have measured finality from the denial of certiorari.

This factor favors neither party. Petitioner filed his 60(b)(6) motion nine months after the United States Supreme Court denied certiorari. *See Jones*, 733 F.3d at 840 (finding two month gap not a long delay, so the factor "weighs slightly in Jones's favor"). The Court finds no support for Petitioner's argument that delay in this context is measured from the date of the substitution of co-counsel.

e.     Close connection

The fifth factor "is designed to recognize that the law is regularly evolving." *Phelps*, 569 F.3d at 1139. The mere fact that tradition, legal rules, and principles

15

inevitably shift and evolve over time "cannot upset all final judgments that have predated any specific change in the law." *Id.* Accordingly, the nature of the change is important and courts should examine whether there is a "close connection" between the original and intervening decision at issue in a Rule 60(b)(6) motion. *Id.*

*Martinez* held that the ineffective assistance of PCR counsel could serve as cause to excuse the procedural default of an ineffective assistance of counsel claim. *Martinez* has no connection with Claim A, which does not allege ineffective assistance of counsel. *See, e.g.*, *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (finding *Martinez* does not excuse default of *Brady* claim). *Martinez* is, however, closely connected with Claim B, which alleges ineffective assistance of trial counsel. The Court finds that Claim C, which alleges a conflict of interest affecting appellate counsel's performance, is also connected *Martinez*. This factor weighs in favor of Petitioner.

f.   Comity

The last factor concerns the need for comity between independently sovereign state and federal judiciaries. *Phelps*, 569 F.3d at 1139. The Ninth Circuit has determined that principles of comity are not upset when an erroneous legal judgment, if left uncorrected, "would prevent the true merits of a petitioner's constitutional claims from ever being heard." *Id.* at 1140. For example, in *Phelps* the district court dismissed the petition as untimely, thus precluding any federal habeas review of the petitioner's claims. The court found that this favored the grant of post-judgment relief because

dismissal of a first habeas petition "denies the petitioner the protections of the Great Writ entirely." *Id.*

Here, the Court's judgment did not preclude review of all of Petitioner's federal constitutional claims. A number of the claims, including trial counsel's alleged ineffectiveness at sentencing, were addressed on the merits in both the district and appellate courts. The comity factor does not favor Petitioner.

g.    Conclusion

The Court has evaluated each of the factors set forth in *Phelps* in light of the particular facts of this case. The change in law and close connection factors weigh slightly in Petitioner's favor. They are far outweighed by the diligence, finality, and comity factors. Accordingly, the Court concludes that with respect to Claim A, B, and C, Petitioner's motion to reopen judgment fails to demonstrate the extraordinary circumstances necessary to grant relief under Rule 60(b)(6).

**2.    Claims B and C are not substantial**

In addition to failing to meet the "extraordinary circumstances" requirement of 60(b)(6), Claims B and C fail under *Martinez*'s own terms, which require a petitioner to "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 132 S. Ct. at 1318.

As noted above, Claim B consists of a different argument than the claim raised in the habeas petition. The presentation of a new, procedurally-defaulted claim does not

17

warrant reopening the habeas proceeding under Rule 60(b). *See Jones*, 733 F.3d at 836 (explaining that Rule 60(b) is not "a second chance to assert new claims").

The Court further finds that neither the original ineffective assistance claim nor the restyled Claim B is substantial as required under *Martinez*. First, there was abundant evidence of premeditation. *See Wood*, 881 P.2d at 1169. Next, evidence inconsistent with the theory that Petitioner cocked and uncocked the weapon would not have negated other substantial evidence supporting the grave risk of death factor. In affirming this factor, the Arizona Supreme Court also relied on the presence of others in the confined garage where the murders happened, the fact that Petitioner pointed the gun at another employee, and the fact that another employee fought with Petitioner for control of the gun. *Id.* at 1174–75. Impeaching Officer Sueme with her prior statement would not have affected this evidence, and would not have created a reasonable probability of a different result.

In Claim C Petitioner alleges that appellate counsel Baker Sipe labored under a conflict of interest because his new employer had represented Ms. Dietz in another matter. Analyzed as a claim of ineffective assistance of appellate counsel, this claim is not substantial.

To establish a Sixth Amendment violation based on conflict of interest, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 338 (1980); *Mannhal v. Reedt,* 847 F.2d 576, 579 (9th Cir. 1988). Generally, it is more difficult to demonstrate an actual conflict

18

resulting from successive, rather than simultaneous, representation. *Mannhalt,* 847 F.2d at 580. Conflicts of interest based on successive representation may arise if the current and former cases are substantially related, if the attorney reveals privileged communications of the former client, or if the attorney otherwise divides his loyalties. *Id.* Ultimately, however, an actual conflict of interest is one "that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor,* 535 U.S. 162, 171 (2002). The simple "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler,* 446 U.S. at 350.

Petitioner's principal defense at trial was that the State failed to prove premeditation and that Petitioner acted impulsively when he committed the murders. *See Wood*, 881 P.2d at 1167 ("Premeditation was the main trial issue. The defense was lack of motive to kill either victim and the act's alleged impulsiveness, which supposedly precluded the premeditation required for first degree murder."). Petitioner asserts that appellate counsel abandoned that defense because it would have required him to attack Ms. Dietz by advancing the theory that she and Petitioner were involved in a "covert relationship." (Doc. 116 at 11.) According to the Petition, Baker Sipe instead pursued a weaker theory that Petitioner was insane at the time of the shootings. (*Id*.)

Petitioner's argument does not convince the Court that appellate counsel's performance was affected by his office's prior representation of Ms. Dietz. Whether or not Baker Sipe "abandoned" the trial defense of impulsivity, the Arizona Supreme Court considered the issue and noted that there was "a great deal of evidence that

unequivocally compels the conclusion that Defendant acted with premeditation." *Wood*, 881 P.2d at 1169. The court detailed the evidence as follows:

> Defendant disliked and had threatened Eugene. Three days before the killing, Defendant left threatening phone messages with Debra showing his intent to harm her. Defendant called the shop just before the killings and asked whether Debra and Eugene were there. Although Defendant regularly carried a gun, on the morning of the murders he also had a spare cartridge belt with him, contrary to his normal practice. Defendant calmly waited for Eugene to hang up the telephone before shooting him. There was no evidence that Eugene did or said anything to which Defendant might have impulsively responded. Finally, Defendant looked for Debra after shooting Eugene, found her in a separate area, and held her before shooting her, stating, "I told you I was going to do it, I have to kill you."

*Id.*

An appellate argument that Ms. Dietz and Petitioner were in a "covert relationship" would have had no bearing on the issue of premeditation. Petitioner has posited only a "theoretical division of loyalties." *Mickens*, 535 U.S. at 171.

**B.     Ineffective Assistance of Counsel Claim is a Second or Successive Petition**

In Claim D, Petitioner seeks relief under Rule 60(b)(6) from this Court's denial of his claim that trial counsel performed ineffectively at sentencing by failing to produce mitigating evidence of organic brain damage. Petitioner argues that he is not attacking the substance of the Court's merits ruling, *see Gonzales*, 545 U.S. at 532, but rather challenging the integrity of the proceedings, in this case the Court's denial of

20

Petitioner's motion for evidentiary development. (Doc. 116 at 16–18.) Petitioner's argument is unpersuasive.

A Rule 60(b) motion constitutes a second or successive habeas petition when it "seeks vindication of" or "advances" one or more "claims." *Gonzalez,* 545 U.S. at 531; *see Post v. Bradshaw*, 422 F.3d 419, 424 (6th Cir. 2005). A "claim" is "an asserted federal basis for relief from a state court's judgment of conviction," and "[a] motion can . . . be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits.*" *Gonzales*, 545 U.S. at 532. "On the merits" refers "to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." *Id.* at n.4. A motion does not attack a merits ruling when the motion "merely asserts that a previous ruling which precluded a merits determination was in error." *Id.*

With respect to Claim D, Petitioner's Rule 60(b) motion seeks to advance a claim that this Court previously considered and dismissed on the merits. *See Post*, 422 F.3d at 424. It is therefore a second or successive habeas petition. "It makes no difference that the motion itself does not attack the district court's substantive analysis of those claims but, instead, purports to raise a defect in the integrity of the habeas proceedings." *Id.* By challenging this Court's denial of resources, Petitioner seeks to vindicate his habeas claim that counsel performed ineffectively at sentencing. *Id.* (explaining that in characterizing 60(b) motion as second or successive petition "all that matters is that [petitioner] is "seek[ing] vindication of" or "advanc[ing]" a claim by taking steps that

lead inexorably to a merits-based attack on the prior dismissal of his habeas petition")
(quoting *Gonzalez*, 545 U.S. at 531–32).

*Gonzalez* makes explicit that a Rule 60(b) motion is in effect a successor petition
if it "seek[s] leave to present 'newly discovered evidence' in support of a claim
previously denied." 545 U.S. at 531. Thus, Petitioner's contention that newly-
discovered evidence of his neuropsychological status will bolster Claim D confirms that
the claim is in substance a second or successive petition asserting a merits-based
challenge to the Court's previous ruling.

Claim D will be denied as an unauthorized second or successive petition. 28
U.S.C. § 2244(b)(3).

### CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Petitioner's Motion for Relief from Judgment
Pursuant to Rule 60(b)(6) is DENIED. (Doc. 116.)

IT IS FURTHER ORDERED that Petitioner's Motion for Stay of Execution is
DENIED as MOOT. (Doc. 117.)

Dated this 20th day of July, 2014.


Jennifer G. Zipps
United States District Judge